THE PEOPLE OF THE STATE OF NEW YORK ex rel. LUCIEN L. BONHEUR, Petitioner, *v.* PHILIP J. CHRIST et al., Individually and as Members of the Board of Supervisors for the County of Nassau et al., Respondents.

MORRIS F. CRAFT, Individually and as a Member of the Board of Supervisors of the County of Nassau, Respondent and Appellant; LOTT VANDEWATER, JR., et al., Intervenors, Appellants.

Political parties — designation of newspapers for publication of session laws — when provisions of section 20 of County Law cannot be carried out, board of supervisors has implied power to act.

1. The National Progressive party is clearly a political party within the definition of that term in the Election Law (Cons. Laws, ch. 17; amd. L. 1911, ch. 891, § 3, subd. 8).

2. A general power in boards of supervisors, as boards, to designate newspapers for the publication of the session laws is to be implied

·from the control over the subject which is vested in them by vari-
·ous statutes. (Legislative Law, § 48; County Law, §§ 17, 18, 20; Tax
Law, § 130.) If the designation can be made in the manner prescribed
in section 20 of the County Law, which particularly directs the
method of designating newspapers, its commands must be followed,
but where that cannot be done the board must resort to its general
powers. The duty to publish is primary. The direction to do it in
a particular way is secondary. When it is impossible to comply
with both the latter must give way to the former.

3. Where, therefore, a new political party, at the last general
election, cast the second highest number of votes in a particular
county, thus becoming one of the two principal parties into which
the people of the county have divided themselves, and yet has no
representative in the board of supervisors, and no newspaper which
had been previously designated to publish the session laws and
which could hold over, a contingency arises not provided for in sec-
tion 20 of the County Law, and it is the duty of the board of super-
visors, under its general power, to designate a newspaper repre-
senting the principles of the new party to publish the session laws,
concurrent resolutions of the legislature and its own acts, and it
may be compelled to perform that duty by mandamus.

*People ex rel. Bonheur* v. *Christ*, 155 App. Div. 915, affirmed.

(Argued March 3, 1913; decided March 25, 1913.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
February 14, 1913, which affirmed an order of Special
Term granting a motion for a peremptory writ of man-
damus to compel the board of supervisors of Nassau
county to designate a newspaper representing the National
Progressive party in that county to publish the session
laws, concurrent resolutions of the legislature and acts of
said board required to be published.

At the general election held for the selection of national
and state officers in November, 1912, the National Pro-
gressive party, which had no existence prior to that year,
obtained for its candidates in the county of Nassau the
second highest number of votes. The relator, as chair-
man of the National Progressive organization in that
county, claims that it is the duty of the board of super-

visors of that county to designate a newspaper representing the principles of that party to publish the session laws and concurrent resolutions of the legislature and the acts of the board of supervisors. For the purpose of compelling the performance of that duty he instituted this proceeding to secure a writ of peremptory mandamus directing such a designation by the said supervisors. The Special Term granted the mandamus, and its action has been affirmed by the Appellate Division. An appeal has now been taken to this court.

The board of supervisors of Nassau county is composed of three members. In December, 1912, two of its members belonged to the Democratic party and one to the Republican party. On December 9th, and prior to the institution of this proceeding, the two Democratic members designated a newspaper representing the principles of that party as one of the newspapers to publish the session laws, concurrent resolutions and acts of the supervisors. The Republican member did not at that time designate such a newspaper, and the appellants now contend that under the provisions of section 20 of the County Law (Cons. Laws, ch. 11) the Republican newspaper theretofore designated was automatically continued. At a later date the Republican member did make a formal designation of the Republican paper which had been holding over under the provisions of said section 20, and it is the right of that paper (the "Hempstead Sentinel") to act as one of the designated newspapers that is challenged by this proceeding.

In order to get what we deem to be a correct view of the effect of section 20 of the County Law we must look to other sections of the same law, and to other general laws. Section 48 of the Legislative Law (Cons. Laws, ch. 32) provides: "All laws of a general nature which shall hereafter be passed by the legislature of this state, shall be published in at least two newspapers in each county of this state where there are or may

be hereafter two newspapers published; and in one newspaper in each county where but one newspaper is published or may be published. All laws of a local nature which shall hereafter be passed by the legislature of this state, shall be published in like manner in each of the counties interested in the same."

Section 20 of the County Law directs that "the members of the board of supervisors in each county representing, respectively, each of the two principal political parties into which the people of the county are divided or a majority of such members representing respectively, each of such parties, shall designate in writing a paper fairly representing the political party to which they respectively belong, regard being had to the advocacy by such paper of the principles of its party and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county, to publish the session laws and concurrent resolutions of the legislature required by law to be published. * * * If a majority of the members of the board representing either of such parties cannot agree upon a paper or shall fail to make a designation of a paper or papers as above provided, then and in such case, the paper or papers last previously designated in behalf of the party or parties whose representatives, or a majority of them, have failed to agree shall be held to be duly designated to publish the laws for that year, and any designation of a paper or papers made contrary to the provisions of this section shall be void. * * * If either of the two principal parties into which the people of the county are divided shall have no representative among the members of the board of supervisors, then and in that event, the newspaper last legally designated in behalf of such party, not having a representative among the members of the board of supervisors, shall be held to be duly designated to publish the laws for that year. * * *"

Section 17 of the County Law directs that the resolu-

tions of the boards of supervisors shall be published in the newspapers " appointed to publish the session laws," and by section 18 of the same statute it is provided that the acts of such boards " shall be published in two newspapers representing respectively the two principal political parties into which the people of the counties are divided, after such manner, and at such compensation as the several boards of supervisors may provide."

Section 130 of the Tax Law (Cons. Laws, ch. 60), which relates to the publication of tax notices in respect of unredeemed lands, directs that such notices shall be published "in the newspapers designated by the board of supervisors * * * to publish the session laws," and section 151 of the same law prescribes that the lists of lands to be sold by the county treasurers on tax sales be published " in two newspapers designated for the publication of the session laws."

*Abram S. Gilbert, Alfred T. Davison* and *Lewis J. Smith* for appellants. In order to direct that a newspaper supporting the National Progressive party be designated it is necessary for the court to amend and change section 20 of the County Law, and this the courts will not do. (*Matter of Halpin,* 108 App. Div. 271; *McKuskie* v. *Hendrickson,* 128 N. Y. 555; *Standard Oil Co.* v. *U. S.,* 221 U. S. 103; *Low Wah Suey* v. *Backus,* 225 U. S. 460; *Hull* v. *Hull,* 2 Strob. Eq. [S. C.] 174.) Under section 20 of the County Law there is no requirement that a paper representing the so-called " National Progressive Party " shall be designated. (*People ex rel. Baldwin* v. *Barnes,* 45 N. Y. Supp. 356; *People ex rel. Harper* v. *Roberts,* 52 Misc. Rep. 308; *People ex rel. R. & G. Co.* v. *McCarthy,* 134 App. Div. 761.) A board of supervisors or the members thereof acting in an official capacity have no inherent powers. (*Wells* v. *Town of Salina,* 119 N. Y. 280; *Matter of Water Commissioners of White Plains,* 176 N. Y. 239; *Vincent* v. *County of Nas-*

*sau,* 43 Misc. Rep. 249; *Kingsley* v. *Bowman,* 33 App. Div. 1; *Brady* v. *Supervisors,* 10 N. Y. 160.)

*W. Bourke Cockran* and *James L. Dowsey* for respondents. The session laws and concurrent resolutions, as well as acts of the board of supervisors, must be published. (Cons. Laws, ch. 32, § 48; Cons. Laws, ch. 11, §§ 17, 18.) The National Progressive party of the county of Nassau is one of the two principal political parties into which the people of that county are divided. (L. 1911, ch. 891, art. 1, § 3, subd. 8.) A Progressive newspaper must be designated. (Cons. Laws, ch. 11, §§ 17, 18, 20; Cons. Laws, ch. 32, § 48.) It is the duty of the board of supervisors to make the designation. (*People* v. *Supervisors of Greene Co.,* 13 Abb. [N. C.] 421; *Johnson* v. *Hudson River R. R. Co.,* 49 N. Y. 455; *Cook* v. *Kelly,* 12 Abb. Pr. 35; *People ex rel. Hiser* v. *Gilon,* 76 Hun, 346; *Wood* v. *Lacombe,* 99 N. Y. 43; *Matter of Niagara, L. & O. Power Co.,* 111 App. Div. 686; *People ex rel. Greese* v. *Hilliard,* 85 App. Div. 507; *Kirby* v. *State of N. Y.,* 68 Misc. Rep. 631; *Topham* v. *Interurban St. R. Co.,* 96 App. Div. 323; *Hurst* v. *City of New York,* 55 App. Div. 68; *Atlas Refining Co.* v. *Smith,* 52 App. Div. 109.)

*Clinton M. Flint* for South Side Messenger Company, intervening.

WERNER, J. The preliminary contention of the appellants, to the effect that the so-called National Progressive party is not a political party for the purposes of this proceeding, may be quite summarily dismissed. The Election Law (Cons. Laws, ch. 17; amended L. 1911, ch. 891, § 3, subd. 8) defines a party to be " any political organization which at the last preceding election for Governor polled at least ten thousand votes for any candidate for any office nominated by it to be voted for by all of the electors of the state." Tested by this statutory

definition, the National Progressive party is clearly a political party. Without any attempt at argument we simply suggest that we can think of no reason why the term "party" as used in the statutes germane to our discussion should not be construed as falling within the definition of that term in the Election Law.

The main question involved in this proceeding is whether the board of supervisors of a county can be compelled by writ of mandamus to designate a newspaper to publish the session laws when it is impossible to comply literally with the provisions of section 20 of the County Law, and the decision of that question depends largely upon the angle from which it is viewed. If, for instance, we should regard section 20 as the only law relating to the publication of the session laws, it would be obviously impossible to apply its provisions to the conditions which exist in Nassau county; but if we treat it as one of several statutes all relating to a common subject, and read them all together in the light of the purpose for which they were enacted, it is readily perceivable that the specific and impracticable commands of section 20 of the County Law should not be permitted to interdict the performance of the plain duty imposed by other cognate sections and statutes.

The underlying purpose of all these statutes, including section 20 of the County Law, is to secure for the information of the public the dissemination of the session laws and other legislative enactments. The manifest scheme of section 20 is to do that through the medium of newspapers supposed, or at least represented, to have the largest circulation in the county. The general idea is set forth in the Legislative Law, in the Tax Law, and in parts of the County Law, all of which enjoin the publication of specified enactments and proceedings in the newspapers designated to publish the session laws and concurrent resolutions of the legislature. Section 20 of the County Law, which is but a part of the general statutory scheme, directs the designation

of these newspapers by a particular method which cannot be followed in Nassau county because of political conditions which were not foreseen when section 20 was enacted or from time to time amended. We must, therefore, either find a general authority in somebody to publish the session laws in the several counties, or we must hold that their proper publication in Nassau county must fail because the directions of section 20 of the County Law cannot be literally followed. The latter alternative might prove most unfortunate, for it would affect the publication of all tax notices and legislative enactments of a local nature, as well as all the enactments and proceedings of the board of supervisors. All these are directed to be published in the papers designated for the publication of the session laws, and if in some of the counties no paper can be legally designated for that purpose the far reaching results may be more easily imagined than described.

We have already referred to the general purpose of the statutes which provide for these publications. Section 20 of the County Law directs that this shall be done in a specified way. If there are two or more newspapers published in a county, the supervisors belonging to the two principal political parties into which the people of the county are divided shall each designate a paper, representing the principles and supporting the candidates of their respective parties. If the members belonging to either of the two leading parties shall fail to agree, or if either of such parties shall have no representative in the board of supervisors, the paper last previously designated by the members of the party failing to agree or having no representative shall continue to be the designated paper. It is obvious that when this section and its several amendments were framed and adopted, the expression "the two principal political parties," had a well-understood meaning in this state. It clearly referred to the Republican and the Democratic parties which were then the leading political

parties, and so long as that condition continued, the provisions of section 20 of the County Law were easily complied with. But things have changed. The year 1912 gave birth to a new party known as the National Progressive party which, at the last general election, nominated candidates for national and state offices, and in the county of Nassau cast the second highest number of votes. It thus became one of the two principal parties into which the people of the county have divided themselves, and it has no representative in the board of supervisors and no newspaper which had been previously designated and which could hold over. This is a contingency not provided for in section 20 of the County Law; but the purpose of this section and of the other laws to which we have referred may still be effectuated under the powers which must be held to be inherent in public officers who are commanded by the legislature to do certain things but are not directed how to do them. In such a case the law which contains a command implies the power to do the thing commanded. If section 20 of the County Law were expunged from the statute books, the several boards of supervisors would still be under the necessity of publishing legislative enactments of a local character, their own enactments and proceedings, tax notices and other matters, in the papers designated for the publication of the session laws and concurrent resolutions. If these cannot be published in a newspaper designated for that purpose, they cannot be legally published at all, and it is unthinkable that the whole scheme shall fail simply because a single section of one statute prescribes a method of selecting a medium of publication that is impossible under present political conditions in one or more of the counties of the state.

The obvious remedy is to resort to the general power which must be held to inhere in the boards of supervisors, as boards, to designate newspapers for the publication of the session laws when the conditions are

such that the specific commands of section 20 of the County Law cannot be obeyed. This general power is to be implied from the control over the subject which is vested in the boards of supervisors. Whatever may have been the reason for delegating this duty, in the first instance, to two political groups of supervisors instead of the boards as concrete bodies, it was never intended that the purpose of these statutes shall fail utterly whenever a board of supervisors happens to be composed of political elements which render it impossible to muster two separate groups representing the two principal parties. Section 20 of the County Law presents a plain *casus omissus*, and if that were the only law on the subject we should be compelled to send the parties to the legislature for relief; but the failure of that section to provide for such a contingency as has arisen in Nassau county, so far from rendering boards of supervisors powerless to perform their duties, simply calls into action those general powers to which we have referred. It is the duty of the board of supervisors of Nassau county to publish various proceedings and enactments in two newspapers designated for the publication of the session laws. If that designation could be made in the manner prescribed in section 20 of the County Law there would, of course, be no other alternative than to follow its commands; but since that cannot be done, the board must resort to its general powers. The duty to publish is primary. The direction to do it in a particular way is secondary. When it is impossible to comply with both, the latter must give way to the former.

The orders of the Special Term and the Appellate Division should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, CHASE, COLLIN and HOGAN, JJ., concur.

Orders affirmed.